**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| REBEKAH LOCKHART and JAMES LOWE, individually, and on behalf of all others similarly situated<br><br>    *Plaintiffs,*<br><br>    v.<br><br>EL CENTRO DEL BARRIO D/B/A/ CENTROMED,<br><br>    *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 23-CV-01156 |
| CAITLIN JOHNSON, individually, and on behalf of all others similarly situated<br><br>    *Plaintiffs,*<br><br>    v.<br><br>EL CENTRO DEL BARRIO D/B/A/ CENTROMED,<br><br>    *Defendant* | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 23-CV-01200 |
| JASMIN GRACE, individually, and on behalf of all others similarly situated<br><br>    *Plaintiffs,*<br><br>    v.<br><br>EL CENTRO DEL BARRIO D/B/A/ CENTROMED,<br><br>    *Defendant* | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 23-cv-1463-JKP-ESC |

## MOTION TO SUBSTITUTE THE UNITED STATES

TO THE HONORABLE JASON K. PULLIAM, UNITED STATES DISTRICT JUDGE:

COMES NOW El Centro Del Barrio d/b/a CentroMed ("CentroMed"), Defendant in the above-captioned case, and moves to substitute the United States in its place as the only proper defendant under 42 U.S.C. § 233(a).

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

LEGAL FRAMEWORK ..............................................................................................1

FACTUAL AND PROCEDURAL BACKGOUND ......................................................5

ARGUMENT .................................................................................................................9

A.  CentroMed is a deemed PHS employee for all relevant periods ............................................10

B.  Maintenance of patient information and protection of patient privacy is a "related function" inextricably woven into patient care ..................................................................................10

C.  Plaintiff's action—alleging unauthorized disclosures of private and confidential patient information—arises out of CentroMed's performance of medical or related functions within the meaning of 42 U.S.C. § 233(a) ...........................................................................................13

CONCLUSION.............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021)................................................................................4, 6, 7

*Estate of Booker v. Greater Philadelphia Health Action, Inc.*,
10 F. Supp. 3d 656 (E.D. Pa. 2014) .......................................................................5

*Brignac v. United States*,
239 F.Supp.3d 1367 (N.D. Ga. 2017) ...............................................................15, 17

*C. K. v. United States*,
No. 19-cv-2492, 2020 WL 6684921 (S.D. Ca. Nov. 12, 2020).......................3, 5, 16

*Estate of Campbell v. South Jersey Medical Ctr.*,
732 Fed. Appx. 113 (3d. Cir. May 1, 2018).............................................................5, 14

*De La Cruz v. Graber*,
No. 16-cv-1294, 2017 WL 4277129 (C.D. Cal. June 15, 2017)............................16

*Doe v. Neighborhood Healthcare*,
No. 21-cv-1587, 2022 WL 17663520 (S.D. Cal. Sept. 8, 2022) ..................3, 16, 17

*Ford v. Sandhills Medical Foundation, Inc.*, No. 22-2268, 2024 WL 1335202 (4th Cir. Mar. 29,
2024) ........................................................................................................................

*Friedenberg v. Lane County*,
68 F.4th 1113 (9th Cir. 2023) ...............................................................................2, 8

*Hale v. ARcare, Inc.*, No. 22-cv-00117, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024) ..................3

*Hui v. Castaneda*,
559 U.S. 799 (2010)................................................................................2, 4, 5, 8, 18

*Hunter v. Bryant*
502 U.S. 224 (1991)................................................................................................4

*Krandle v. Refuah Health Center, Inc.*,
No. 22-cv-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024)....................3, 17, 18

*Mele v. Hill Health Center*,
No. 06-cv-00455, 2008 WL 160226 (D. Conn. Jan. 8, 2008) ...............................16

*6oretti v. Letty Owings Ctr.*,
No. 21-cv-1525, 2023 WL 6216279 (D. Or. Sept. 25, 2023) ................................6

*Saucier v. Katz*,
533 U.S. 194 (2001)................................................................................................9

*Teresa T. v. Regaglia*,
154 F. Supp. 2d 290 (D. Conn. 2001) ..................................................................16, 17

*TTHR, L.P. v. Coffman,* 338 S.W.3d 103, 109 (Ct. App. Tex. March 17, 2011)...........................19

*Z.B. v. Ammonoosuc Cmnty Health Servs.,*
    2004 WL 1571988, *3 (D. Me. June 13, 2004) ....................................................16

**Statutes**

28 U.S.C. § 1442(a)(1)...................................................................................................6

28 U.S.C. § 1346(b) ......................................................................................................8

42 U.S.C. § 233.....................................................................................................*passim*

42 U.S.C. § 233(i).......................................................................................................10

42 U.S.C. § 254b.....................................................................................................4, 6, 7

42 U.S.C. § 233(g)................................................................................................3, 4, 10

42 U.S.C. § 233(g)(1)(D).............................................................................................2, 4

42 U.S.C. § 233(g)(1)(F)..............................................................................................10

42 U.S.C. § 233(g)(4) ...................................................................................................4

42 U.S.C. § 233(h)(1)................................................................................................2, 12

42 U.S.C. § 254b(a)(1)...................................................................................................6

42 U.S.C. § 254b(k)(3)(C)....................................................................................6, 12, 18

42 U.S.C. § 254b(o).......................................................................................................7

Emergency Health Personnel Act of 1970...................................................................3

Federal Tort Claims Act.................................................................................1, 7, 9, 10, 20

Federally Supported Health Centers Assistance Act of 1992, Pub. L. 102-501 (1992) .................2

Federally Supported Health Centers Assistance Act of 1995, Pub. L. 104-73 (1995) ...................2

**Other Authorities**

42 C.F.R. § 51c.110 .....................................................................................................12

42 C.F.R. § 51c.303 .....................................................................................................12

116 Cong. Rec. 42,543 (1970).......................................................................................2

American Medical Association, Code of Medical Ethics, Opinion 3.1.1: Privacy in Health Care
    ...........................................................................................................................11

American Medical Association, Code of Medical Ethics, Opinion 3.2.1: Confidentiality ...........11

American Medical Association, Code of Medical Ethics, Opinion 3.2.4: Access to Medical
    Records by Data Collection Companies ..................................................................11

American Medical Association, Code of Medical Ethics, Opinion 3.3.2: Confidentiality &
    Electronic Medical Records.....................................................................................11

4872-4752-7351, v. 1

Application for Health Center Program Award Recipients for Deemed Public Health Service Employment with Liability Protections Under the Federal Tort Claims Act .............1, 4, 7, 10

Health Resources and Services Administration, Bureau of Primary Health Care, Health Center Program Compliance Manual (2018)........................................................................................1

H.R. Rep. No. 102–823 (1992)..........................................................................................................6

H.R. Rep. No. 104–398 (1995)..........................................................................................................6

H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970).........................................................................3

Institute of Medicine, Committee on Health Research and the Privacy of Health Information, Beyond the HIPAA Privacy Rule: Enhancing Privacy, Improving Health Through Research, 86 (2009)...................................................................................................................................11

Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82462 (Dec. 28, 2000) .............................................................................................................................17, 19

U.S. Department of Health and Human Services, Health Resources and Services Administration, Federal Tort Claims Act Health Center Policy Manual (2014) ...........................................5, 10

4872-4752-7351, v. 1

## INTRODUCTION

Defendant El Centro Del Barrio d/b/a CentroMed ("CentroMed")—a federally supported health center—is deemed to be an employee of the United States Public Health Service (PHS). As such, CentroMed is entitled to an absolute immunity from *any* civil action or proceeding arising out of its performance of "medical . . . or related functions" within the scope of its deemed federal employment. 42 U.S.C. § 233(a) and (g). The immunity afforded by the PHS Act is absolute (*i.e.*, suit immunity), not merely a defense against liability, because (when applicable) it makes a plaintiff's "exclusive" remedy a claim "against the United States" under the Federal Tort Claims Act (FTCA). 42 U.S.C. § 233(a). To effectuate § 233(a) immunity, the United States is substituted as the proper defendant in place of the (actual or) deemed PHS defendant and the action proceeds as one brought under the FTCA. *Id*; *Hui v. Castaneda*, 559 U.S. 799, 811 (2010).

Substitution is required here. Plaintiffs' claims arise out of "medical . . . related functions," 42 U.S.C. § 233(a), that are not only statutory conditions of CentroMed's federal funding, status, and immunity, but they are essential to, and inseparable from, the practice of medicine. That is, CentroMed is required "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* Health Res. & Servs. Admin. (HRSA), U.S. Dep't of Health & Hum. Servs. (HHS), Application for Health Center Program Award Recipients for Deemed Public Health Service Employment with Liability Protections Under the FTCA ("Deeming Application"), at 16, available at https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2020-02.pdf. In the statutorily prescribed Deeming Application, HHS expressly recognizes "confidentiality and security" of patient information as one of the "areas/activities of highest *clinical risk* for the health center" and

1

requires each health center applicant to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that includes, among other things, training on "HIPAA medical record confidentiality requirements" and "other applicable medical record confidentiality requirements." *Id*. at 11-12; 42 U.S.C. § 233(g)(1)(D), (h)(1) (prohibiting HHS Secretary from granting deemed status unless applicant "has implemented appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health-related functions* performed by the entity").

There is no question that this action resulted from CentroMed's alleged failure to perform this very function—*i.e.*, to protect the confidentiality of patient information from unauthorized use and disclosure. ECF No. 21 (Complaint) at ¶ 189 (alleging CentroMed had a "duty to use reasonable security measures under [The Health Insurance Portability and Accountability Act of 1996 (HIPAA)]" to "'reasonably protect' confidential data from 'any intentional or unintentional use or disclosure' and to 'have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information'") (quoting from 45 C.F.R § 164.530(c)(1), (2)—HIPAA's implementing regulation, commonly known as the "Privacy Rule"—but mistakenly citing the preceding subsection, § 164.520(c)(1)); *see also* ¶ 230 ("failing to ensure the confidentiality and integrity of electronic PHI CentroMed created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1)"), ¶ 231 ("failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).").

Because CentroMed's alleged duty to safeguard patient information is a "medical . . . or related function[]" within the meaning of § 233(a), the United States must be substituted in its

2

place as the only proper defendant. *Krandle v. Refuah Health Center, Inc.*, No. 22-cv-4977, 2024 WL 1075359, at \*9-10 (S.D.N.Y. Mar. 12, 2024) (holding, in a putative class action, that a "[deemed health center]'s alleged duty to safeguard PII and PHI is a 'medical . . . or related function'") (citing *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at \*7 (S.D. Cal. Sept. 8, 2022) (same)).[1]

## LEGAL FRAMEWORK

The Emergency Health Personnel Act of 1970 "grants absolute immunity to [United States Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806 (immunity is broad enough to "easily accommodate both known and unknown causes of action"); *see also* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

In October 1992, as a three-year demonstration project, Congress enacted the Federally Supported Health Centers Assistance Act ("FSHCAA") of 1992, Pub L. 102-501, codified at 42 U.S.C. § 233(g) *et seq.*, "which extends to certain entities and their employees that are 'deemed' to be PHS employees . . . the immunity provided in Section 233(a)." *C. K. v. United States*, No. 19-cv-2492, 2020 WL 6684921, at \*3 (S.D. Ca. Nov. 12, 2020) (Robinson, J.) (citing *Hui*, 559

---

[1] There are nonbinding cases to the contrary, *e.g.*, *Ford v. Sandhills Medical Foundation, Inc.*, No. 22-2268, 2024 WL 1335202 (4th Cir. Mar. 29, 2024), *Hale v. ARcare, Inc*., No. 22-cv-00117, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024), *on appeal*, No. 24-1726 (8th Cir.), but they are unpersuasive and wrongly decided. *See infra* fn.3.

U.S. at 806, and 42 U.S.C. § 233(g)(1)(A)); *Friedenberg v. Lane County*, 68 F.4th 1113, 1126 (9th Cir. 2023) (rejecting the plaintiffs' contention that "§ 233 immunity extends lesser protection to deemed PHS employees under § 233(g) than it does to actual PHS employees under § 233(a)"); s*ee also Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that deemed PHS employee enjoys "*the same legal immunity* that is extended to employees of the Public Health Service") (emphasis added). Entities eligible for deemed PHS status and immunity include health center recipients of federal funding under 42 U.S.C. § 254b. 42 U.S.C. § 233(g)(4) (eligibility for deemed status hinges on applicant's receipt of "Federal funds under section 254b").

In 1995, Congress amended the FSHCAA to make it permanent and to resolve concerns that arose during the demonstration period. Federally Supported Health Centers Assistance Act of 1995, Pub. L. 104-73, 109 Stat. 777 (1995). The statutory subsections added to the FSHCAA in 1995—§ 233(g)(1)(D)–(F), (*l*)(1)–(2)—were designed to: (1) encourage increased use of the program by health centers; and (2) ensure deemed defendants' access to a federal forum in which to assert the absolute immunity afforded to them by federal law. *See* H.R. Rep. No. 104–398, at 6, 7 (1995), reprinted in 1995 U.S.C.C.A.N. 767, 769–70. To accomplish these congressional purposes, the 1995 amendments established a prospective coverage process under § 233(g)(1)(D)– (E) (requiring health center deeming application), (F) (making agency deeming determinations "final and binding" on the Secretary, the Attorney General, and other parties in subsequent suits, and prohibiting the Secretary and the Attorney General from determining "that the provision of services which are the subject of such a determination are not covered under this section").

When a lawsuit arises out of a deemed PHS defendant's covered conduct—*i.e.*., the performance of "medical . . . or related functions," 42 U.S.C. § 233(a)—the defendant must provide a copy of the complaint to the HHS Secretary's designated point of contact—namely, its Office of

General Counsel (OGC). *Id.* at § 233(b); FTCA Health Center Policy Manual, § 2, Claims and Lawsuits at 19 (designating HHS OGC as agency's representative). The agency must, in turn, promptly furnish copies of the complaint to "the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary." *Id.*

When the civil action is initiated in state court, the Attorney General, within 15 days after being notified of such action, "shall" appear in and advise the state court "as to whether the Secretary has determined" that the defendant is "deemed to be an employee of the Public Health Service . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* § 233(a), (*l*)(1). If the Attorney General does so, the civil action or proceeding "shall be removed . . . to the [appropriate] district . . . and the proceeding deemed a tort action brought against the United States." *Id.* § 233(*l*)(1), (c). "If the Attorney General fails to appear in State court within the time period prescribed" to effectuate removal, any deemed entity or employee may remove the action or proceeding "to the appropriate United States district court." *Id.* § 233(*l*)(2). Once removed, the matter is automatically stayed until the district court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim . . . ." *Id.*; *Estate of Campbell v. South Jersey Medical Ctr.*, 732 Fed. Appx. 113, 117 (3d. Cir. May 1, 2018) ("For section 233(*l*)(2) to have any effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so."); *Estate of Booker v. Greater Philadelphia Health Action, Inc.*, 10 F. Supp. 3d 656, 670 (E.D. Pa. 2014) (ordering substitution in case removed to federal court).

Where, as here, the action (for which immunity is asserted) originates in federal court, the Court makes the immunity/substitution determination through "ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 811; *C. K.*, 2020 WL 6684921, at *3, *7 (citing *Hui* and ordering

substitution of United States in place of deemed PHS defendant in case originating in federal court); *see also Moretti v. Letty Owings Ctr.*, No. 21-cv-1525, 2023 WL 6216279, at *5 (D. Or. Sept. 25, 2023) (recognizing courts around the country that "repeatedly have rejected" an argument by the government that courts have no substitution authority under § 233(a)).

## FACTUAL AND PROCEDURAL BACKGROUND

CentroMed is a Texas nonprofit, community-based health center that receives federal funding under the PHS Act, 42 U.S.C. § 254b *et seq*., to provide primary health care and related services to residents of specific geographic areas the HHS Secretary has designated as "medically underserved." *Id*. at 254b(a); *see also* ECF No. 21 (Compl.) at ¶ 41; Declaration of Graciela Cigarroa (Cigarroa Decl.), ¶¶ 3-4. As such, CentroMed is subject to detailed federal requirements, oversight, and control. *See* H.R. Rep. No. 102-823 at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation."); *cf. Agyin*, 986 F.3d at 177 (concluding the deemed health center is "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1)). Among its statutory obligations, CentroMed must: (1) assess the health "needs" of its "medically underserved" service area, 42 U.S.C. § 254b(a)(1)(B), (b)(2); (2) provide a broad range of primary and related health services to residents of its service area regardless of their insurance status or ability to pay, *id*. at § 254b(b)(1)-(2), (k)(3)(G); and (3) "have an ongoing quality improvement system that includes clinical services and management, and that *maintains the confidentiality of patient records*." *Id*. at § 254b(k)(3)(C) (emphasis added) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with this requirement).

6

For all relevant periods, CentroMed applied for and received deemed PHS status for itself and its employees. *See* Cigarroa Decl., Ex. 1 (HHS Notices of Deeming Action confirming CentroMed's deemed status for calendar years 2021, 2022, and 2023). The Notices of Deeming Action confirms coverage comparable to an "occurrence" policy—*i.e.*, the coverage applies to conduct (acts or omissions) that occurred in a period for which the defendant was deemed, regardless of when the claim is made. *Id.* (each notice states that "FTCA coverage is comparable to an "occurrence" policy without a monetary cap). As a deemed PHS employee, CentroMed acts under HRSA, to support the mission of the actual PHS by performing medical and related functions that would otherwise fall within PHS purview. *Agyin*, 986 F.3d at 176; *see also* 42 U.S.C. § 254b(o) (HHS Secretary administers the Section 330 Health Center program through HRSA). This includes the protection of patients' private information. *See* Deeming Application at 16 (requiring that each health center applicant must "implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements").

On or about September 18, 2023, Plaintiff Lockhart filed a putative class action against CentroMed. ECF No. 1. Three other putative class actions against CentroMed, all arising out of the same events, were either initiated in or removed to this Court. *Grace v. El Centro Del Barrio*, No. 5-23-cv-01463-JKP-ESC (removed on November 21, 2023): *Johnson v. El Centro Del Barrio*, No. 5-23-cv-01200-JKP-ESC (filed September 26, 2023); *Leal v. El Centro Del Barrio*, No. 23-cv-01092-JKP (filed August 30, 2023 but voluntarily dismissed January 2, 2024).

On January 25, 2024, the Court consolidated *Johnson* and *Grace* into *Lockhart* (as the first-filed action) and ordered Plaintiffs to file a consolidated complaint. ECF No. 19 (finding

consolidation appropriate under five-factor test). Plaintiffs did so on February 22, 2024. ECF No. 21 (Complaint).

At its core, the Complaint alleges that: (1) CentroMed owed legal duties to Plaintiffs and putative class members to "secure and safeguard" their "personal identifiable information ('PII') and protected health information ('PHI')" (collectively referred to as "Private Information") from unauthorized use or disclosure, (2) CentroMed breached duties owed and implied promises made to Plaintiffs and the putative class members by failing to implement and maintain systems and procedures for protecting Private Information and safeguarding it against loss or unauthorized use, consistent with industry standards (*e.g.*, HIPAA and its implementing regulations), (3) CentroMed caused the unauthorized disclosure of Private Information to a third-party, and, as a result, (4) Plaintiffs and the putative class members suffered numerous injuries. Each plaintiff—as a "current patient of CentroMed," ECF No. 21 at ¶¶17, 23, 29, 35—asserts claims for: "(1) negligence; (2) breach of [implied] contract; (3) negligence per se; (4) breach of fiduciary duty; (5) intrusion upon seclusion/invasion of privacy; (6) unjust enrichment; (7) violation of the Texas Medical Practices Act; (8) violation of the Texas Hospital Licensing Law, and (9) declaratory judgment." ECF No. 21 ¶¶ 16, 183-263.[2]

This timely motion to substitute—to determine the identity of the proper defendant—is accompanied by a separate request to stay proceedings and extend responsive pleading deadlines pending its resolution. As the Supreme Court has said time and again, immunity determinations ought to be made at the earliest stages of litigation, because the right (and the purposes it serves)

---

[2] The causes of action "restate and reallege the allegations in the preceding paragraphs," including paragraph 16 which "asserts claims for" "intrusion upon seclusion/invasion of privacy," "violation of the Texas Medical Practices Act," and "violation of the Texas Hospital Licensing Law." ECF No. 21 (Compl.) ¶¶183-263.

4872-4752-7351, v. 1

is "effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial") (citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985)); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (recognizing that the Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

## ARGUMENT

Substitution of the United States for CentroMed is not only proper but required by statute. Each fundamental element of CentroMed's absolute immunity is satisfied: (1) it was deemed to be a PHS employee for the period in which the events giving rise to this action occurred, and (2) this action "resulted from" its "performance of medical … or related functions" (covered conduct) within the scope of its employment as a deemed PHS employee. 42 U.S.C. § 233(a) and (g). Where, as here, a deemed health center was acting within the scope of its employment when the alleged acts or omissions occurred, and those acts or omissions occurred in the performance of "medical … or related functions," the plaintiff's exclusive remedy is a claim "*against the United States*" under the FTCA (codified at 28 U.S.C. § 1346(b)). 42 U.S.C. § 233(a) (remedy "shall be *exclusive of any other civil action or proceeding by reason of the same subject-matter* against the officer or employee . . . whose act or omission gave rise to the claim") (emphasis added).

Moreover, "there is no reason to think that scope certification by the Attorney General is a prerequisite to immunity under § 233(a). To be sure, that immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 806; *see also Friedenberg*, 68 F.4th at 1126 (ordering substitution of the United States, over its

9

objection, in place of deemed PHS defendants); *see also* HRSA, HHS, FTCA Health Center Policy Manual, § II, K.1 at p. 20 (acknowledging that Attorney General's "certification or failure to certify is subject to judicial review"), https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-manual.pdf.

### A.     CentroMed is a deemed PHS employee for all relevant periods

Pursuant to 42 U.S.C. §§ 233(g) and (h), the HHS Secretary deemed CentroMed to be a PHS employee for the period in which the events giving rise to this civil action occurred. Cigarroa Decl., Ex. 1 (Notice of Deeming Action for CY 2021, 2022, 2023); *see also* https://data.hrsa.gov/tools//ftca-search-tool (confirming CentroMed's continuous deemed status since at least January 1, 2011); ECF No. 21, at ¶¶ 45, 74-94, 144-45 (CentroMed, a nonprofit safety net provider and covered entity under HIPAA, allegedly failed to properly secure and safeguard patient information, resulting in unauthorized disclosure of confidential patient information in 2023).

As a matter of law, CentroMed's federal PHS status is "final and binding" on the Secretary, the Attorney General, and all parties to litigation. 42 U.S.C. § 233(g)(1)(F). The one exception—which is inapplicable here—provides that the Attorney General may take away an individual's (not an entity's) deemed status if the individual "would expose the Government to an unreasonably high degree of risk of loss," but only after affording the deemed individual "due process" to challenge the basis for that action. P.L. 104-73 (Dec. 26, 1995) (title in statute-at-at-large accurately describes § 233(i) as a "due process" provision), codified at 42 U.S.C. § 233(i).

### B.     Maintenance of patient information and protection of patient privacy is a "related function" inextricably woven into patient care

The protection of patient privacy and the maintenance of patient confidentiality are functions of health care professionals that are inextricably woven into patient care. Indeed, a pledge

to privacy has been included in the code of ethics of nearly all health care professionals in the United States, beginning with the American Medical Association's 1847 first Code of Ethics. Institute of Medicine, Committee on Health Research and the Privacy of Health Information, Beyond the HIPAA Privacy Rule: Enhancing Privacy, Improving Health Through Research, 86 (2009), https://www.ncbi.nlm.nih.gov/books/NBK9579/. The current American Medical Association's Code of Medical Ethics mandates that "[p]hysicians must seek to protect patient privacy in all settings to the greatest extent possible," as "protecting information gathered in association with the care of the patient is a core value in health care." American Medical Association (hereinafter "AMA"), Code of Ethics § 3.1.1, Privacy in Health Care, https://code-medical-ethics.ama-assn.org/ethics-opinions/privacy-health-care; *see also* AMA Code of Medical Ethics § 3.3.2 Confidentiality & Electronic Medical Records, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality-electronic-medical-records ("Information gathered and recorded in association with the care of a patient is confidential, regardless of the form in which it is collected or stored.").

The AMA Code of Medical Ethics further counsels that "respecting patient privacy in other forms is also fundamental, as an expression of respect for patient autonomy and a prerequisite for trust." AMA Code of Medical Ethics § 3.1.1 (privacy protections extend to physical, informational, decisional, and associational forms of privacy); see also American Medical Association (AMA), Opinion 3.2.1: Confidentiality, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality ("Patients need to be able to trust that physicians will protect information shared in confidence. . . Physicians in turn have an ethical obligation to preserve the confidentiality of information gathered in association with the care of the patient."); AMA, Opinion 3.2.4: Access to Medical Records by Data Collection Companies, https://code-medical-ethics.ama-

11

assn.org/ethics-opinions/access-medical-records-data-collection-companies ("Information gathered and recorded in association with the care of a patient is confidential . . . . Disclosing information to third parties . . . without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship.").

Consistent with these longstanding principles, the statutory structure and design of the Health Center Program recognizes privacy and confidentiality as fundamental aspects of health care from initial patient encounters, through outreach and care coordination, to the use of patient data in quality assurance and quality improvement activities. Indeed, health centers are statutorily mandated, as a condition of both their receipt of federal funding and their deemed status, to protect and safeguard the confidentiality of patient information. 42 U.S.C. § 254b(k)(3)(C) (requiring quality improvements systems that "maintains the confidentiality of patient records"). This statutory requirement is reinforced by the PHS Act's implementing regulations. 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent…"); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

Under the FSHCAA, HHS is prohibited from deeming a health center to be a PHS employee absent a determination that the health center has "implemented appropriate policies and procedures to reduce the risk of malpractice *and* the risk of lawsuits arising out of any health or health-related functions performed by the entity." 42 U.S.C. § 233(h)(l) (emphasis added). To "verify" that the health center applicant has done so, the HHS-prescribed Deeming Application requires each health center's assurance that it has, among other things, "implemented systems and

12

procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* Deeming Application, at 16.

Because HHS recognizes "confidentiality and security" of patient information as one of the "areas/activities of highest clinical risk for the health center," the health center applicant is also required to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that includes training on "HIPAA medical record confidentiality requirements" and "other applicable medical record confidentiality requirements." *Id*. at 11-12.

> **C.    Plaintiff's action—alleging the unauthorized disclosures of private and confidential patient information—arises out of CentroMed's performance of medical or related functions within the meaning of 42 U.S.C. § 233(a)**

There is no question that this lawsuit resulted from CentroMed's "performance of medical … or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254b. The Complaint acknowledges, if not hinges on, the inextricable link between CentroMed's grant-supported activities (*i.e.*, the provision of health care services) and the confidentiality of patient information. *See*, e.g., ECF No. 21 (Compl.) at ¶ 47 ("As a *condition of providing primary care service* to Plaintiffs and Class Members, CentroMed requires that its clients, who are patients, entrust it with highly sensitive personal and health information belonging to Plaintiffs and Class Members, including Private Information.") (emphasis added); ¶ 176 (identifying as a question "common" to the putative class the issue of whether CentroMed "failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach" and whether it "complied with applicable data security laws and regulations"), ¶ 189 (alleging CentroMed had a "duty to use reasonable security

measures under HIPAA" to "'reasonably protect' confidential data from 'any intentional or unintentional use or disclosure' and to 'have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information'") (quoting 45 C.F.R § 164.530(c)(1), (2), but mistakenly citing § 164.520(c)(1)), ¶ 230 ("failing to ensure the confidentiality and integrity of electronic PHI CentroMed created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1)"), ¶ 231 ("failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1)").

Although the Complaint advances several theories of professional malpractice or malfeasance—*i.e.*, (1) negligence; (2) breach of implied contract; (3) negligence per se; (4) breach of fiduciary duty; (5) intrusion upon seclusion/invasion of privacy; (6) unjust enrichment; (7) violation of the Texas Medical Practices Act; (8) violation of the Texas Hospital Licensing Law, and (9) declaratory judgment," ECF No. 21 ¶¶ 16, 183-263—the immunity under § 233(a) hinges on the substance of the PHS employee's *conduct* (*i.e.*, the performance of "medical . . . or related functions")—not the label applied to a plaintiff's claim, the theories or causes of action it advances, or its ultimate viability. To find otherwise would allow a plaintiff, in some cases, to sidestep or defeat the purpose of § 233(a) immunity "through 'artful pleading.'" *Campbell*, 732 Fed.Appx. at 116; cf. Sloan, 217 S.W.3d at 767-68 ("When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through the artful pleading of his claim") (finding that the "duty of confidentiality is inseparable from the health care services" and "[m]aintaining the confidentiality of patient records is part of the core function of providing health care services"); *cf. Sloan v. Farmer*, 217 S.W.3d 763, 767 (Ct. App. Tex.—Dallas Mar. 22, 2007)

4872-4752-7351, v. 1

("When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through the artful pleading of his claim").

In any event, the central allegation here is that CentroMed breached its duties to safeguard and protect the confidentiality of patient information from unauthorized use or disclosure and, as a direct result, caused them to suffer various injuries. *See*, *e.g.*, ECF 21 (Compl.) ¶ 242 (unauthorized disclosure to third party caused Plaintiffs and putative class members to suffer "anxiety, emotional distress, loss of privacy, and other economic and non-economic losses"). Apart from the connection the Complaint draws between medical care and a provider's duties to protect the confidentiality of patient information, a number of federal courts have recognized that that connection as well—*i.e.*., that the function of protecting confidential patient information is inextricably "interwoven" with the provision of medical care, and that § 233(a) covers claims alleging failures to protect that information.

In *Kezer v. Penobscot Cmty Health Ctr.*, the District Court for the District of Maine determined that deemed defendants performed a "related function" when they accessed the plaintiff's confidential mental health records in conducting quality assurance/improvement audits, among other functions. *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-225, 2019 BL 141566 at *8 (D. Me. Mar. 21, 2019) ("[T]he performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services. Indeed, the whole point is to review the quality of previously rendered services to improve the quality of future services.").

The *Kezer* court reviewed and discussed several cases in which various operational functions were found to constitute "related functions" within the ambit of § 233(a). *See*, *e.g.*, *Brignac v. United States*, 239 F.Supp.3d 1367, 1377 (N.D. Ga. 2017) (concluding "hiring and retention of . . . physicians is directly connected to [the] provision of medical care"); *De La Cruz*

*v. Graber*, No. 16-cv-1294, 2017 WL 4277129 at *3–4 (C.D. Cal. June 15, 2017), report and recommendation adopted, 2017 WL 4271122 (C.D. Cal. Sept. 21, 2017) (concluding medical administrator, whose performance of administrative duties gave rise to constitutional tort claim, was immune under § 233(a)); *Teresa T. v. Regaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001) (concluding physician's decision to report or withhold reporting of suspected child abuse is a "related function to the doctor's performance of medical services"); *C. K.*, 2020 WL 6684921, at *6 (concluding that deemed health center's chief medical officer's alleged failure to report and cover up of subordinate physician's sexual abuse of a patient resulted from the CMO's "medical . . . or related functions" for purposes of § 233(a)); *see also Mele v. Hill Health Center*, No. 3:06-cv-00455, 2008 WL 160226, at * 3 (D. Conn. Jan. 8, 2008) (concluding that claim resulting from improper disclosure of medical information "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and was "covered by section 233(a)" immunity); *Z.B. v. Ammonoosuc Cmnty Health Servs.*, 2004 WL 1571988, *3 (D. Me. June 13, 2004) ( "[N]othing in the language of section 233 requires that the damages claimed result from events related only to the performance of medical functions for the named plaintiff"); *Pomeroy v. United States*, No. 17-10211-DJC, 2018 WL 1093501, at *3-4 (D.C. Mass. Feb. 27, 2018) (rejecting government position that "food services" or the "negligent provision of food" is not a medical or related function and concluding deemed health center's execution of treatment plan qualified as "related function" under § 233(a) when nurse, contrary to plan, provided solid food to patient with known swallowing disability).

In *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022), the District Court for the Southern District of California found that the function of maintaining confidential patient records constituted a "medical or related function" within the

meaning of 42 U.S.C. § 233(a). In support of its decision, the court cited "longstanding principles regarding the protection of health information." *Id*. (citing Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule"), 65 Fed. Reg. 82462, 82467 (Dec. 28, 2000)) ("The need for privacy of health information, in particular, has long been recognized as critical to the delivery of needed medical care."). "Although [the PHS defendant's] failure to maintain and protect the confidential information from unauthorized access was not done in the actual rendering of medical treatment, it is a related function because maintaining confidential personal and health information is necessary to effectively treat patients." *Id*. at *7 (citing cases in which § 233(a) immunity covered conduct of non-provider employees of deemed health centers).

In *Krandle v. Refuah*, the District Court for the Southern District of New York—in a thorough and well-reasoned decision—held that a "[deemed health center]'s alleged duty to safeguard PII and PHI is a 'medical . . . or related function'" within the meaning of § 233(a). 2024 WL 1075359, at *11-12.  The court examined the text of § 233(a), concluding that the "*plain meaning* of the phrase 'medical . . . or related functions' appears to cover the performance of activities *with an established relationship to the practice of treating or diagnosing patients*." *Id*. at *6. After reviewing a series of cases involving data-breaches, the court identified two "key features" of functions that have such "an established relationship to the practice of medicine"— *i.e.,* (1) the function "is imposed on doctors acting in their professional capacity" or is a "required element" of evaluating a patient, *id*. at *8 (citing *Teresa T.*, 154 F. Supp. 2d at 300, and *Brignac*, 239 F. Supp. 3d at 1377); and (2) the function is "necessary to effectively treat patients." *Id*. (citing, *e.g.*, *Doe*, 2022 WL 17663520, at *7).

*Krandle* found that "[b]oth considerations warrant coverage." *Id*. at *9. First, the court found that deemed health centers are required by federal statute to "keep patient records" safe and

"that duty—whether it is referred to as 'confidentiality' or 'privacy'—encompasses both protections against unauthorized disclosure and unauthorized access by third parties." *Id.* (citing requirement under 42 U.S.C. § 254b(k)(3)(C) for deemed health center to have a "system" to "maintain[ ] the confidentiality of patient records" and a "panoply of [HIPAA] regulations" requiring deemed health centers to "safeguard protected health information from *any* intentional or unintentional use or disclosure"). *Id.* Second, the court found that the function of protecting the confidentiality of patient information "is essential to the practice of medicine." *Id.* "Indeed, '[t]he need for privacy of health information, in particular, has long been recognized as critical to the delivery of needed medical care' because it implicates the keystone of the doctor-patient relationship: 'trust.'" *Id.* (citing Privacy Rule, 65 Fed. Reg. at 82467).[3]

The Complaint here concedes as much. ECF 21 (Compl.), ¶ ("As a condition of providing primary care service," CentroMed requires that its patients "entrust it with highly sensitive

---

[3] *But see Ford v. Sandhills Medical Foundation, Inc.*, No. 22-2268, 2024 WL 1335202 (4th Cir. Mar. 29, 2024). Contrary to its text and binding precedent*, Ford* misperceives § 233(a) as a *waiver of sovereign immunity*, to be narrowly construed. Section 233(a), however, grants a "comprehensive" and absolute immunity as federal right to individual PHS employees. *Hui*, 559 U.S. at 806, 810 ("Language that broad easily accommodates both known and unknown causes of action."); *Krandle*, 2024 WL 1075359, at *7 (squarely confronting and rejecting notion that "§ 233(a) should be *narrowly construed* because it waives sovereign immunity") (citing *Hui*, 559 U.S. at 806). By using the wrong lens, *Ford* misconstrues and restricts the phrase "related functions"—which is otherwise naturally and "typically defined broadly," *Krandle*, 2024 WL 1075359, at *5—to include only those functions that are performed *during* "the provision of health care to the injured party." *Ford*, 2024 WL 1335202, at *7. In turn, *Ford* reaches the mistaken conclusion that an act or omission in protecting the confidentiality of patient data, which occur after (not during) the provision of services, is thus "too removed from the provision of health care to amount to a 'related' function." *Id.*

Nowhere does § 233(a) indicate that "related functions" must arise during a patient's treatment. *Krandle*, 2024 WL 1075359; *see also Friedenberg v. Lane County*, 68 F.4th 1113, 1118 (9th Cir. 2023) (finding that § 233(a) immunity does not require that "the alleged tort occur during the provision of services" but instead "depends on whether the claim arose out of the defendant's performance of 'medical, surgical, dental, or related functions'").

18

personal and health information"), ¶ 66 ("Cybersecurity is not just a technical issue . . . cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care"), ¶ 150 ("Plaintiffs entrusted" CentroMed with "their personal and health information . . . for the purpose of receiving healthcare services"), ¶ 197 ("CentroMed had a special relationship with Plaintiffs and Class Members" by which they "entrusted" CentroMed with their personal and health information). Moreover, the Privacy and Security Rules—which Plaintiffs repeatedly invoke, ECF. No. 21 ¶ 75, 76, 79, 80, 81, 83-91, 93, 189, 220, 230-39—recognizes that "[t]he need for privacy of health information, in particular, has long been recognized as critical to the delivery of needed medical care." *See* Standards for Privacy of Individually Identifiable Health Information ("Privacy Preamble"), 65 Fed. Reg. 82,462-01, 82,467 (Dec. 28, 2000) (codified at 45 C.F.R. pt. 160)).

In sum, the plain text, structure, and purpose § 233(a) and (g) support one conclusion: the protection of private and confidential patient information bears an established and essential relationship to medical care. This statutorily mandated function, in relevant context, is "medical or . . . related function[]." 42 U.S.C. § 233(a).[4] Accordingly, plaintiff's claims—alleging CentroMed's failure to perform this function—fit squarely within the "broad" language of this

---

[4] This conclusion is supported by (but not dependent on) the fact that Plaintiffs' claim is a "health care liability claim" under the law of the place. In Texas, a "health care liability claim" is defined as a "claimed departure from accepted standards of . . . professional or administrative services directly related to ['any act or treatment performed or furnished ... for, to, or on behalf of a patient during the patient's medical care']." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10), (13). "There can be no 'administrative service' more directly related to the rendition of health care than the memorialization of that care. And the duty to maintain the confidentiality of those records cannot be separated from the duty to maintain them." *TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 109 (Tex. App.—Fort Worth 2011, no pet.) (recognizing that "[t]he duty of confidentiality arises during the patient's medical care and must be maintained as long as the provider possesses the medical records") (citing Tex. Occ.Code. Ann. § 159.002(d) (stating that confidentiality "continues to apply ... regardless of when the patient receives the services of a physician")).

4872-4752-7351, v. 1

immunity-granting statute, which "easily accommodates both known and unknown causes of action," providing "comprehensive" immunity to federally supported health centers, like CentroMed, from any claim arising from the performance of "medical . . . or related functions" undertaken within the scope of its deemed federal employment. *See Hui*, 559 U.S. at 806 (citing § 233(a)) (concluding § 233(a) covers *Bivens* claims even though such claims post-dated the passage of § 233(a) and are not within with scope of the FTCA's waiver of sovereign immunity).

There is no dispute that CentroMed was deemed to be a PHS employee and was acting in the scope of its deemed federal employment with respect to the alleged conduct. Nothing more is required for immunity to apply.

## CONCLUSION

For the forgoing reasons, the Court should substitute the United States as the only proper defendant in place of CentroMed in the above-captioned action.

Dated: April 15, 2024                          Respectfully submitted,

LANGLEY & BANACK INCORPORATED

s/ *Natalie Friend Wilson*
Natalie Friend Wilson
Texas Bar No. 24076779
745 E Mulberry Ave, Ste 700
San Antonio, Texas 78212
Tel: 210.736.6600
nwilson@langleybanack.com

FELDESMAN LEIFER LLP

Matthew S. Freedus*
D.C. Bar No. 475887
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@feldesman.com

20

Counsel for Defendant El Centro Del Barrio
(d/b/a CentroMed)

*Admitted *pro hac* vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 55th day of April, 2024, a true and correct copy of foregoing *Motion to Substitute United States*, was served upon the below parties via the Court's electronic transmission facilities and email:

**KENDALL LAW GROUP, PLLC**
Joe Kendall
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: 214/744-3000
Facsimile: 214/744-3015
jkendall@kendalllawgroup.com

**THE JOHNSON FIRM**
Christopher D. Jennings
Tyler Ewigleben
Laura Edmondson
610 President Clinton Ave., Suite 300
Little Rock, AR 72201
Tel: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com
ledmondson@yourattorney.com

**ZIMMERMAN REED LLP**
Brian C. Gudmundson
Rachel K. Tack
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fac: (612) 341-0844
brian.gudmundson@zimmreed.com
rachel.tack@zimmreed.com

**SHUB & JOHNS LLC**
Jonathan Shub

**JENNINGS PLLC**
Christopher D. Jennings
P.O. Box 25972
Little Rock, Arkansas 72221 (501) 247-6267
chris@jenningspllc.com

**GUERRERO & WHITTLE, PLLC**
Ketan U. Kharod
Texas Bar No. 24027105
510 Baylor Street, Austin, TX 78703
Telephone: (512) 605-2300
Fax: (512) 222-5280
ketan@gwjustice.com

STERLINGTON PLLC
Edward Ciolko
Jennifer S. Czeisler
One World Trade Center
85th Floor
New York, New York 10007 Telephone: (212) 433-2993
Edward.ciolko@sterlingtonlaw.com
Jen.czeisler@sterlingtonlaw.com

EVANGELISTA WORLEY LLC
James M. Evangelista
500 Sugar Mill Road Suite 245A
Atlanta, GA 30350
Tel.: 404-205-8400
Fax: 404-205-8395 Email: jim@ewlawllc.com

21

Benjamin F. Johns
Samantha E. Holbrook
Four Tower Bridge
200 Barr Harbor Drive Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com


　　　　The *Motion to Substitute* was further served on the United States by Certified Mail, Return Receipt Requested pursuant to Federal Rule of Civil Procedure 4(i) at the following addresses:

**United States Attorney**

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**United States Attorney for the Western District of Texas**

| United States Attorney, Civil Process Clerk 601 N. W. Loop 410, Suite 600 San Antonio, TX 78216 | Robert D. Green Assistant United States Attorney U.S. Attorney's Office 601 NW Loop 410, Suite 600 San Antonio, Texas 78216 robert.green3@usdoj.gov |
| --- | --- |

*s/ Natalie Friend Wilson*
Natalie Friend Wilson

22