UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**REBEKAH LOCKHART, on behalf
of herself and all others similarly
situated, et al.,**

*Plaintiffs*,

v.                                                                  Case No. 5:23-CV-1156-JKP-ESC

**EL CENTRO DEL BARRIO, d/b/a**                    (Consolidated with
Centromed,                                                   Case Nos. 5:23-CV-1200-JKP-ESC and
                                                                          5:23-CV-1463-JKP-ESC)

*Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is the question of federal jurisdiction over each of the three cases consolidated into this action. Plaintiffs commenced three class actions against El Centro Del Barrio, doing business as CentroMed, each arising from the same data breach. In consolidating the cases, the Magistrate Judge recognized:

> Two of the cases (5-23-CV-01156-JKP-ESC and 5-23-CV-01200-JKP-ESC) were originally filed in federal court as Rule 23 class actions under the jurisdictional provision of the Class Action Fairness Act [("CAFA")], 28 U.S.C. § 1332(d)(2). The third case (5-23-CV-01463-JKP-ESC) was filed in state court and removed to federal court based on Defendant's contention that Defendant should be deemed to be a federal employee under the Public Health Service Act, 42 U.S.C. § 233(l)(2), and the general federal officer removal statute, 28 U.S.C. § 1442(a).

*See* ECF No. 19. At a conference before the Magistrate Judge, the parties agreed that the Court should consolidate the three cases. *Id*. at 2-3. A non-party—the United States—also appeared at the conference "to address its decision not to intervene and substitute itself as Defendant in any of the three cases under 42 U.S.C. § 233 and to address its position that removal of the 5-23-CV-01463-JKP-ESC [(*Grace*)] case was improper." *Id*. at 2. The United States took no position as to consolidation "other than to reiterate its position that Defendant's removal of 5-23-CV-01463-

JKP-ESC was defective and this Court therefore lacks jurisdiction over the third case." *Id*. at 3.

After hearing all positions taken at the hearing and reviewing the record, the Magistrate Judge consolidated the three cases and ordered "Defendant to file an amended notice of removal addressing subject matter jurisdiction in 5-23-CV-01463-JKP-ESC." *Id*. The United States took no "position on whether Defendant could cure the defect in removal by filing an amended notice of removal asserting some other basis for federal subject matter jurisdiction." *Id*. To invoke CAFA as an additional basis for removal, Defendant thereafter filed such an amended notice.

Defendant later moved to substitute the United States as the only proper defendant for this consolidated action. *See* ECF No. 31. The Court has stayed the case pending resolution of the motion to substitute. The Court later identified jurisdictional and abstention concerns and ordered the parties to show cause why (1) the Court should not decline jurisdiction under exceptions to CAFA and (2) for the case removed from state court, it ordered Defendant to show cause why the Court should not sever the case from the consolidated action and remand it to state court as argued by the United States. *See* Order to Show Cause (ECF No. 43).

In response to the show cause order, Plaintiffs withdraw their reliance on CAFA and state that they will not oppose a motion to remand for lack of jurisdiction. *See* ECF No. 44 at 2. They also state that defense counsel indicated that Defendant would not rely on CAFA and will instead rely on the grounds set forth in the original notice of removal. *See id*.

Defendant responds that "[t]he Court should sever *Grace* and exercise jurisdiction under 42 U.S.C. § 233(*l*) [of the Public Health Service Act, also known as the Health Centers Act] or 28 U.S.C. § 1442(a)—two separate and distinct removal statutes—to adjudicate CentroMed's claimed immunity under 42 U.S.C. § 233(a)." ECF No. 45 at 1. It withdraws any reliance on CAFA as a basis for removal. *Id*. at 1 n.1. It maintains that each of the relied-upon removal statutes, "affords a federal forum to adjudicate a deemed PHS employee's claimed immunity." *Id*. at 5. The United

2

States contends that neither removal statute provides federal jurisdiction under the undisputed facts of this case. *See*, *generally*, ECF No. 47.

## I. JURISDICTION

Federal courts always have "jurisdiction to determine [their] own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 622 (2002). Through their response, Plaintiffs concede that they are unable to provide enough information to satisfy jurisdiction under CAFA. Although Plaintiffs do not oppose a motion to remand, "federal tribunals lack authority to remand to the state court system an action initiated in federal court." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 428 (2010). For actions originally commenced in federal court, a lack of jurisdiction results in dismissal, not remand. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because the Court lacks jurisdiction over the two cases originally filed in federal court (*Johnson* and *Lockhart*) and consolidated with *Grace*, the Court will deconsolidate this action to its three component cases and issue orders of dismissal in *Johnson* and *Lockhart*.

As for the third case, *Grace*, 28 U.S.C. § 1447(c), applicable to actions removed from state court, provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The Court thus must consider whether Defendant has carried its burden to show jurisdiction exists over the removed action. Like Plaintiffs, Defendant has disclaimed reliance on CAFA. But it still maintains that jurisdiction exists under 28 U.S.C. § 1442(a), as a federal officer, and under 42 U.S.C. § 233(*l*), as a public health service ("PHS") employee. Unless Defendant establishes "that it was authorized to remove the case under" one of those statutes, this Court is required to remand *Grace* to state court. *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *1 (3d Cir. Aug. 6, 2024), *cert. denied*, No. 24-727, 2025 WL 889143 (U.S. Mar. 24, 2025). Improper removal under § 233 is a jurisdictional defect that requires

3

the federal court to remand the case to state court unless the defendant establishes a proper jurisdictional basis for removal. *Id.* at *1 nn.2–3.

**A. Relevant Background from State Proceeding**

The parties do not dispute the underlying background. On or about August 23, 2023, Plaintiff Grace commenced a state-court civil action against CentroMed for failing in its duty to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect patients' personally identifiable information and/or protected health information. On September 1, 2023, CentroMed alerted the United States of the civil action.

Less than fifteen days later, on September 15, 2023, the Attorney General appeared in state court. On that date, through a Notice of the United States under 42 U.S.C. § 233(*l*)(1), the United States appeared for the limited purpose to advise the court as required by that statute. It notified the court that the Secretary of Health and Human Services ("HHS") "has advised only that CentroMed has been 'deemed' to be an 'employee of the Public Health Service,'" but had "not yet provided its report as to whether the deemed status of CentroMed under 42 U.S.C. §§ 233(g) and (h) extends to the acts or omissions that are the subject of [the] civil action." The United States explained that consistent with § 233(c), once the "HHS has completed its review and provided its report, the United States Attorney, as the U.S. Attorney General's delegate, will determine whether the acts alleged fall within the scope of 42 U.S.C. § 233(a) . . . and were otherwise within the scope of CentroMed's 'deemed' employment."

About a month later, the Attorney General issued a letter denying CentroMed's claim to immunity because it had determined that the sought damages were not from the performance of medical, surgical, dental, or related functions. Through a supplemental notice to the state court on November 1, 2023, the Attorney General advised the court that the "United States . . . has now determined that [CentroMed] was not deemed to be a Public Health Service employee for purposes

4

of the acts or omissions giving rise to the suit and that this action therefore is not subject to the provisions of 42 U.S.C. § 233." It stated that it would not intervene in the action nor move to substitute itself for CentroMed because the alleged harms resulting from a criminal data breach are neither claims for "personal injury, including death," within the meaning of § 233(a), nor claims for medical malpractice.

CentroMed removed the state action to this Court on November 21, 2023. It provided the state court complaint (Ex. A), the state court docket (Ex. B), a "Notice of Deeming Action" (Ex. C), a notice to state court from the Attorney General (Ex. D), a letter from an Assistant United States Attorney (Ex. E), and a supplemental notice from the Attorney General (Ex. F). The United States filed a notice regarding subject matter jurisdiction on December 21, 2023, in the federal case. No one moved for remand. The case was transferred to the undersigned due to earlier filed related class actions involving the same claims and ultimately consolidated with those cases. The Court raised the question of jurisdiction after Defendant moved to substitute the United States as defendant.

**B. Removal under 42 U.S.C. § 233**

Because "the thicket of § 233 . . . is hardly a model of clarity," courts "proceed with caution" when addressing questions raised by the statute. *Blumberger v. Tilley*, 115 F.4th 1113, 1127 (9th Cir. 2024). This is a wise and prudent course especially when the issues are ones of first impression. Neither the Supreme Court nor the Fifth Circuit has addressed matters concerning § 233 at issue in this case. Still, there are clear provisions even though the statute may evoke differences of opinion.

Stated succinctly: "Removal under the Health Centers Act is authorized 'in only two circumstances.'" *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *3 (3d Cir. Aug. 6, 2024) (quoting *Allen v. Christenberry,* 327 F.3d 1290, 1294–95 (11th Cir. 2003)), *cert. denied*,

5

No. 24-727, 2025 WL 889143 (U.S. Mar. 24, 2025). No one disputes that the statute has two avenues for proper removal.

Section 233(c) provides a means for the Attorney General to remove a case to federal court. It provides:

> Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto.

Section 233(*l*)(2) provides a means for "any entity or officer, governing board member, employee, or contractor of the entity named" to remove the state action to federal court, contingent on "the Attorney General fail[ing] to appear in State court within the time period prescribed under paragraph (1)."

Although § 233(*l*)(2) references only the time-period of paragraph (1), the entirety of paragraph (1) is relevant for purposes of statutory interpretation. Section 233(*l*)(1) provides in full:

> If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) or any officer, governing board member, employee, or any contractor of such an entity for damages described in subsection (a), the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

Of course, the referenced time-period is "within 15 days after being notified" of certain civil actions or proceedings filed in state court.

The United States unquestionably appeared within fifteen days as required by § 233(*l*)(1).

6

It thus argues that Defendant had no ability to remove the case. The clear language of the statute supports that view. While § 233(*l*)(1) imposes both an appearance and an advise requirement upon the Attorney General, the ability of a defendant, like CentroMed, to remove the action to federal court is expressly contingent only upon a failure to appear within the time set out in § 233(*l*)(1), i.e., fifteen days. Nothing in § 233(*l*)(1) touches upon a failure to advise.

To support its removal despite the government's timely appearance in the state court action, Defendant relies on *Blumberger*, a case easily distinguishable on its facts. *Blumberger* addressed whether a "medical malpractice suit" against a doctor "was—or should have been—removed to federal court." 115 F.4th at 1116. After stating that seemingly simple question, the Ninth Circuit recognized that "that everything else gets pretty complicated." *Id*. It ultimately reversed "the district court's conclusion that the Attorney General's . . . notice to the state court that [the relevant] deeming status was 'under consideration' satisfied the advice requirement of § 233(l)(1)" and thus held "that the government was obligated to remove the case to federal court in accordance with § 233(c)." *Id*.

The complexities of the *Blumberger* approach ultimately result in the Ninth Circuit finding the Attorney General obligated to advise the state court that the Secretary had not only deemed the defendant doctor to be a PHS employee at the relevant time but also that he was an employee with respect to the acts or omissions that were subject of the state civil action. *Id*. at 1130. To the extent that such finding may be based on the nature of the civil action being medical malpractice, this Court has no reason to delve deeply into the *Blumberger* analysis. And to the extent that the Ninth Circuit intends its analysis to broadly cover civil actions beyond medical malpractice claims, the Court respectfully disagrees and declines to apply the analysis to this data breach context.

Still, the Ninth Circuit makes some nice distinctions between "deemed" and "covered" as used in the statute.

7

> An employee's "deemed" status is a prospective decision made by the Secretary of HHS to treat the employee as if he were an employee of the PHS. *See* 42 U.S.C. § 233(g)(1)(A). The deeming decision is made before any litigation is filed; it is an ex-ante determination made on a yearly basis as to an employee's status. *Id.* "Once the Secretary makes a determination that an . . . employee . . . of an entity is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General . . . ." *Id.* § 233(g)(1)(F).
>
> Being deemed a PHS employee, however, does not automatically entitle the employee to immunity from suit. Deemed PHS employees—like regular PHS employees—receive immunity only from actions that occurred "within the scope of [their] office or employment at the time of the incident out of which the suit arose." *Id.* § 233(c). The "scope of employment" determination is the Attorney General's to make. *Id.; see also* 28 U.S.C. § 2679(d)(1) (similar). Only certain actions or omissions are therefore "covered." *See* Coverage, Black's Law Dictionary (12th ed. 2024) ("Inclusion of a risk under an insurance policy," and "is often used interchangeably with insurance or protection."). We repeat: "Deemed" and "covered" are different determinations made by different department heads. The first denotes whether the Secretary has determined that a qualified entity's employees have PHS status for a "calendar year." 42 U.S.C. § 233(g)(1)(A). The second, whether the Attorney General has determined that a PHS employee was acting within the scope of his employment "at the time of the incident out of which the suit arose." *Id.* § 233(c).

115 F.4th at 1127–28.

These distinctions nicely demarcate the boundaries between the deeming decision of the Secretary and the certification or coverage decision of the Attorney General. But scope of employment (and ultimately the Attorney General's certification/coverage decision under § 233(c)) is merely a part of the statutory coverage requirements of § 233(a). The text of this provision is clear. *See Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Our inquiry in this case begins and ends with the text of § 233(a).") Subsection (a) addresses the exclusiveness of the remedy against the United States. In setting out the parameters for such remedy, the statute identifies four elements of such exclusive remedy—the remedy must be (1) "for damage for personal injury, including death," (2) "resulting from the performance of medical, surgical, dental, or related functions," (3) by a PHS employee or officer, (4) "while acting within the scope of his office or employment." 42 U.S.C. §

8

233(a). In short, § "233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806. Whether the Secretary has deemed the defendant as a PHS employee or whether that employee was acting within the scope of his or her employment is not relevant if the other statutory coverage requirements are not present.

Multiple components of this statutory coverage determination are contained within § 233(*l*)(1) and blur the clear demarcations of *Blumberger*. According to *Blumberger*, "§ 233(*l*)(1) obligates the Attorney General to report on the Secretary's deeming decision, not to report the Attorney General's ultimate coverage decision." 115 F.4th at 1129. Under *Blumberger*, a defendant satisfies the requirements of "subsection (*l*)(1)'s phrase, 'deemed . . . with respect to the actions or omissions' giving rise to the lawsuit," when the defendant "was deemed for the relevant time period and was providing services for which § 233 would supply immunity." *Id*. at 1130. As identified by *Blumberger*, this phrase appears to encompass at least two elements required for statutory coverage under § 233(a): (1) employment status for the relevant time as shown by the Secretary's deeming decision and (2) the performance of medical or related functions as shown by the civil complaint or petition. When both circumstances are present, "the Attorney General is required to provide positive notice to the state court." *Id*. But the Attorney General "may reply in the negative" if either circumstance is missing, i.e., "if the acts or omissions identified in the complaint fall outside the category of services for which the defendant is deemed" or "if the defendant was not deemed for the time period encompassing the relevant acts or omissions." *Id*. at 1130–31.

From this Court's view, the statutory text supports a negative reply any time the Attorney General cannot affirmatively advise that "the Secretary has determined" the defendant is deemed to be a PHS employee with respect to the actions or omissions at issue in the litigation. Apparently

9

based on the nature of the claims asserted—medical malpractice—*Blumberg* viewed the Attorney General as obligated to advise the state court that the Secretary had indeed deemed the defendant as an employee with respect to the acts or omissions giving rise to the lawsuit. The *Blumberger* dissent sets out some apt arguments for not following the majority decision. *See id*. at 1141–48 (Desai, J. dissenting). But this Court has no need to explore such reasoning.

Even assuming that for a medical malpractice case like *Blumberger*, the two circumstances—deemed employee for the relevant time and providing immunity-invoking services—might naturally co-exist for the deemed relevant time span, this Court does not have medical malpractice claims before it. The issues before this Court concern desired immunity for a data breach. That *Blumberger* may have viewed medical malpractice claims as necessarily qualifying as providing immunity-invoking services holds little persuasive value when alleged claims are based on a data breach.

Whether or not this Court agrees that a medical malpractice claim precludes the Attorney General from advising that the deeming status of the Secretary was under consideration as to the particular circumstances, this Court does not view a data breach claim as being so clear. A data breach case like *Grace* may require some deliberation and consideration as to whether the Attorney General can affirmatively advise that the Secretary has determined that the defendant is deemed to be a PHS employee with respect to the acts or omissions leading to the data breach litigation. It is reasonable to provide the Attorney General some leeway to advise that the matter remains under review or consideration. Determining whether the complained of acts or omissions arise inside or outside the category of services for which the defendant has been deemed is not always clear cut as *Blumberger* may suggest.

In general, "prior annual determination[s] under § 233(g) that [an entity] is deemed a PHS employee—perhaps made well before the conduct related to the suit occurred—cannot satisfy §

233(*l*)(1)'s requirement that the government's coverage determination account for the specifics of the conduct related to the pending lawsuit." *Centerville*, 2024 WL 3666164, at *2. This is not a scope-of-employment determination. It is a scope-of-statutory-coverage determination—whether the acts or omissions fall outside the scope of the medical and related functions for which § 233(a) may provide immunity.

Defendant cites to two cases that have squarely held that § 233(a) immunity covers data-breach class actions. *See* ECF No. 45 (citing *Krandle v. Refuah Health Center, Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *9-10 (S.D.N.Y. Mar. 12, 2024), which in turn cites *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022)). The Fourth Circuit, however, has found *Krandle* non-persuasive, and held that § 233(a) does not shield deemed PHS employees from data breach claims. *See Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, 262 (4th Cir. 2024), *cert. denied*, No. 24-483, 2025 WL 663698 (U.S. Mar. 3, 2025). *Neighborhood Healthcare*, furthermore, specifically relied on the district court opinion that the Fourth Circuit reversed. 2022 WL 17663520, at *6. The Court finds the Fourth Circuit *Ford* decision more persuasive than the district court decisions cited by Defendant.

To "trigger immunity, alleged damages giving rise to a lawsuit must arise from the provision of health care." *Ford*, 97 F.4th at 260. As held in *Ford*, "[d]ata protection is not an activity the medical field in which [Defendant] operates is 'particularly fitted to' execute, nor is any 'related' field of health care." *Id*. at 261. In determining whether a function is related to providing health care, "the focus is on the function that caused the injury." *Id*. In this case, Plaintiffs were not injured by any health care provided by Defendant. That a defendant may have statutory and ethical duties to maintain patient confidentiality, are "requirements to receive federal grant money," and "are separate and apart from § 233(a) immunity." *Id*.

Here, within the time limit required by § 233(*l*)(1), the United States appeared and advised

11

the state court that the Secretary had only deemed CentroMed to be a PHS employee but had not yet provided a report as to whether that deemed status extends to the acts or omissions at issue in the civil action. Although the government notice did not use the term "determined," the notice clearly reflects that the Secretary had not yet made any determination as to the extent of CentroMed's employee status as to the acts and omissions leading to the instant litigation. This Court views this as the equivalent of a negative reply. A positive reply means that the Secretary has determined that the defendant has been deemed a PHS employee with respect to the specific acts and omissions at issue in the litigation. A positive reply is based on an affirmative statement of such determination. The advisement provided by the Attorney General in *Grace* does not suffice as such an affirmative statement. And this Court finds no basis from the nature of the data breach claims to presume that services provided are shielded by § 233(a).

At the time of the advisement, the Attorney General expressed uncertainty as to whether the Secretary had made the necessary determination. The Notice of Deeming Action provided by Defendant deems Defendant to be an employee of the PHS, for the purposes of 42 U.S.C. § 233. The Notice also explains that § 233(a) provides liability protection "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment." For acts and omissions related to a data breach, the Attorney General may have been able to simply advise the state court that the Secretary had not made the determination referenced in § 233(*l*)(1)—just as the Attorney General did in its supplemental notice to the state court. But the Secretary may have been contemplating whether the acts and omissions at issue in the litigation might be a "related function" or somehow otherwise covered by the statute. As mentioned above, courts have come down on both sides of the issue. In any event, unable to make an affirmative statement on the known information, the Attorney General provided a detailed response with the information available; thus, replying

12

in the negative as to the required determination. That other information may come to light does not transform the Attorney General's advisement into an affirmation. Moreover, as already mentioned, the Attorney General later specifically advised that the Secretary had not made the determination referenced in § 233(*l*)(1).

CentroMed argues: "At bottom, 'because [CentroMed] was a 'deemed' PHS employee under § 233 when the events given rise to this action occurred, it ha[d] the right to remove and removal under § 233(*l*)(1) should be automatic upon the Attorney General's appearance." ECF No. 45 at 8 (quoting *Blumberger*, 115 F.4th at 1129). The quote from *Blumberger* merely recognizes that, in *Centerville*, "the Third Circuit rejected" that argument made by the defendant before it. *See* 115 F.4th at 1129. Although *Blumberger* disagreed with *Centerville* in many respects, the Ninth Circuit ultimately declined to consider whether the defendant there improperly removed the case under § 233(*l*)(2) and "conclude[d] that the Attorney General was obligated under § 233(*l*)(1) to advise the state court that [the defendant] had been deemed a PHS employee with respect to the actions or omissions giving rise to the lawsuit." *Id*. at 1140. *Blumberger* provides no support for finding that CentroMed had any right to removal under the facts of this case or that removal should be automatic based on the Attorney General's appearance.

As mentioned several times, while *Blumberger* might provide guidance in medical malpractice cases, it is distinguishable in the current context. Nothing in *Blumberger* permits CentroMed to remove the case. Even if the Attorney General "was obligated to advise the state court in the affirmative of [Defendant's] deemed status with respect to the relevant actions or omissions," *Blumberger*, 115 F.4th at 1139, such obligation also obligates the government "to remove the case to federal court in accordance with § 233(c), *id*. at 1117, not that the defendant may remove the case. Due to the unusual circumstances and given that "the advice requirement of § 233(*l*)(1) was subject to different interpretations, each one plausible," the Ninth Circuit "decline[d] to consider

13

whether [Defendant's] removal under § 233(*l*)(2) was improper." *Id*. at 1140.

Moreover, the Court finds that the removal of *Grace* was improper under § 233. As already highlighted, the Attorney General's advisement was the equivalent of a negative response, and it certainly did not qualify as a positive affirmation that the Secretary had made the determination referenced in § 233(*l*)(1). This Court does not interpret the *Blumberger* interpretation as foreclosing all "under consideration" advisements, and if the case indeed stands for that proposition, this Court respectfully disagrees. The government advisement provided in *Grace* is simply tantamount to a negative response.

It appears, furthermore, that the United States could have definitively answered in the negative because even though Defendant may have been deemed a PHS employee for the relevant time-period, the Secretary had not deemed Defendant as such an employee with respect to the category of services identified in the complaint. Unlike, *Blumberger*, this is not medical malpractice case that falls within § 233(a)'s "medical, surgical, dental, or related functions." This is a data breach action that does not invoke application of § 233(a). *Blumberger* specifically permits the Attorney General to advise "in the negative if the acts or omissions identified in the complaint fall outside the category of services for which the defendant is deemed." *Id*. at 1130.

Here the United States proceeded cautiously at first by not advising whether Defendant's deemed status extended to the acts or omissions at issue in the civil action. Approximately a month later, the United States declined Defendant's request for the government to intervene by informing Defendant that the civil action did not fall within the bounds of § 233(a). Shortly thereafter, the United States advised the state court through a supplemental notice that Defendant "was not deemed to be a Public Health Service employee for purposes of the acts or omissions giving rise to the suit and this action therefore is not subject to the provisions of 42 U.S.C. § 233." Despite that supplemental notice, Defendant itself removed the action to this Court about three weeks later.

Defendant's removal was not proper under § 233(c). That subsection only provides the authority to the Attorney General to remove the action. *Allen,* 327 F.3d at 1295. Nor was Defendant's removal proper under § 233(*l*)(2). That provision permits removal only when the Attorney General fails "to appear and advise" the state court within fifteen days. *Id.* at 1294–95. The Attorney General did appear and advise within the relevant timeframe. The Court will not convert an "under consideration" advisement into a failure to advise under the circumstances of this case.

Improper removal under § 233 is a jurisdictional defect that requires the federal court to remand the case to state court unless the defendant establishes a proper jurisdictional basis for removal. *Centerville*, 2024 WL 3666164, at *1 nn.2–3. And even applying *Blumberger*'s interpretation, the Attorney General was not mandated by the combination of § 233(c) and (*l*)(2) to remove the action. In these circumstances, the proper remedy is to remand the action to state court unless there is some other jurisdictional basis for the removal.

### C. Removal under 28 U.S.C. § 1442(a)(1) (Federal Officer Removal)

Defendant also asserts jurisdiction for removal under 28 U.S.C. § 1442(a)(1). As amended in 2011 and still effective, § 1442(a)(1) affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, [sued] in an official or individual capacity, for or relating to any act under color of such office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc). Under this "statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). "Section 1442(a) is an exception to the 'well-pleaded complaint' rule, under which (absent diversity) 'a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law.'" *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for S. Cal.*, 463

15

U.S. 1, 10 (1983)).

"Federal officers may remove cases to federal court that ordinary federal question removal would not reach." *Latiolais*, 951 F.3d at 290. And "[u]nlike the general removal statute, the federal officer removal statute is to be broadly construed in favor of a federal forum." *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) (citations and internal quotation marks omitted). "But the statute is not limitless." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024).

Although Defendant asserts that it is a federal officer for purposes of Plaintiffs' claims because it is "deemed to be an employee of the Public Health Service," ECF No. 45 at 9, such "status is only relevant 'for purposes of' the Health Centers Act," 42 U.S.C. § 233(g)(1)(A), *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *3 (3d Cir. Aug. 6, 2024), *cert. denied*, No. 24-727, 2025 WL 889143 (U.S. Mar. 24, 2025). Defendant is "not a federal officer in its own right," it is merely "a private health center that receives federal grant funding." *See id.*; *accord* Notice of Removal (ECF No. 1 in *Grace*) ¶ 1.

For a private entity like Defendant to properly remove an action under § 1442(a)(1), it "must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296; *accord Martin*, 101 F.4th at 414; *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co., (St. Chas. II)*, 990 F.3d 447, 452 (5th Cir. 2021). "The absence of any element will defeat removal." *Martin*, 101 F.4th at 414.

Because, as already addressed and explained, Defendant "could not properly remove [*Grace*] under § 233," and because "§ 233 immunity" is the only basis Defendant provides "to satisfy § 1442(a)(1)'s federal-defense requirement," Defendant "has not met its burden of

16

establishing that it raised a colorable federal defense and therefore is not entitled to removal under § 1442(a)(1)." *Centerville*, 2024 WL 3666164, at *3. To permit Defendant "to raise § 233 as a defense for purposes of § 1442 when it didn't abide by the removal procedures of § 233 would sidestep the framework of § 233." *Doe v. Centerville Clinics Inc.*, No. 2:23-CV-1107-NR, 2023 WL 5984337, at *3 (W.D. Pa. Sept. 14, 2023), *aff'd*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024), *cert. denied*, No. 24-727, 2025 WL 889143 (U.S. Mar. 24, 2025).

Furthermore, like *Martin*, the third element is likewise missing. *See* 101 F.4th at 414-16. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007). "To satisfy the 'pursuant to' requirement, a private actor must go beyond mere compliance with the law and instead help the government 'fulfill other basic governmental tasks.'" *Martin*, 101 F.4th at 414–15 (quoting *Watson*, 551 U.S. at 153). In other words, "acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated relationship and will typically involve a contractual agreement or agency relationship." *Id.* (citing *Watson*, 551 U.S. at 156–57).

In the context of *Grace*, the federal government provides an incentive to Defendant, by way of a federal grant, to serve an area or population that has been designated as underserved.

> Broadly speaking, a federal grant is "financial assistance authorized by federal law to support autonomous programs of states or local governments or groups, which the federal government does not dictate but does wish to encourage." Grants are characterized by "a maximum of autonomy in the program essentials, coupled with a necessary minimum of fiscal control to assure integrity."

*Samish Indian Nation v. United States*, 90 Fed. Cl. 122, 131 (2009) (quoting Paul G. Dembling & Malcolm S. Mason, Essentials of Grant Law Practice § 2.02 (1991)), *aff'd in part, rev'd in part on other grounds*, 657 F.3d 1330 (Fed. Cir. 2011), *cert. granted, and judgment vacated in part on*

17

*other grounds*, 568 U.S. 936 (2012). That Defendant received federal grant funding to support its mission of caring for the underserved population does not establish that the federal government is obligated to or would actually provide those services absent Defendant doing so.

More specifically relevant to this lawsuit, Defendant collected the patient data for its benefit, and the federal government would not have developed Defendant's cybersecurity practices had Defendant chosen not to do so. Thus, as was the case in *Martin* with respect to the creation of an online patient portal, this is not a case "where the government has delegated legal authority to the private entity" such that § 1442 removal is supported. *See* 101 F.4th at 415.

## II. CONCLUSION

For the foregoing reasons, the Court finds that the Class Action Fairness Act provides no basis for jurisdiction over any of the three consolidated cases. As that is the only asserted jurisdictional basis for the two cases originally filed in federal court (*Johnson* and *Lockhart*), those cases are subject to dismissal. As for *Grace*, the third case in this consolidated action, Defendant has not carried its burden to show any basis for federal jurisdiction, thereby making that case subject to mandatory remand to state court. Accordingly, the Court hereby **SEVERS** the two member cases and **DECONSOLIDATES** this consolidated action. By separate orders in each of the three cases, the Court will either issue an order of dismissal for lack of jurisdiction or an order to remand for lack of jurisdiction.

**IT IS SO ORDERED this 21st day of April 2025.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**